I think we have Mr. Jarrett per se. Yes, your honor. And for the, uh, for the appellees, we have Mr. Frank. So, Mr. Jarrett, please proceed. Good afternoon, your honors. I'm Ernest Jarrett. May it please the court. There are several issues presented in this appeal, and I will not attempt to address any, all of them, unless there is a specific issue that the court wants to hear from me about. I will devote most of my time to the issues of venue. However, I would like to draw the court's attention to one of the other issues, which is the tortious interference claims that were alleged in my complaint. I'd also like to reserve minutes of my time for rebuttal. With respect to the tortious interference claims, there were three that were alleged in the complaint. One was tortious interference with my attorney-client relationship with my client, tortious interference with my contractual relationship with my client, and tortious interference with my business expectancy with my client. Do you identify at any point in the proceedings a relevant substantive difference between Michigan law with respect to those claims and California law? Yes. Under Michigan law, there's no requirement that I prove an independently wrongful act as there is in California. So, that's very significant. But I wanted to speak to that requirement under California law as the judge, the district court judge, addressed it at page seven of his opinion, which would be page 009 of the excerpts of the record. And on that page, the judge sets forth the elements which are required for intentional interference of contractual relations. And those are five elements and they're set the requirement of those elements, excuse me, of those elements set forth in Pacific Gas and Electric Company versus Bear Stearns and Company. And the judge cites that at the top of the page. He goes on and says that those five elements have been satisfied by the plaintiff. He then relates to the other tortious interference claims, which are interference with the attorney-client relationship and attorney, excuse me, and the economic expectancy interference that was alleged. And he says for those, you have to go further and demonstrate that there was a wrongful, independently wrongful act in order to proceed under the California law. As I said, that wouldn't be required in Michigan. Well, in any event, he lumps all three of the interference claims together and he dismisses all of them, even though he found that all five of those which are required for the contractual interference claim had been satisfied. So while I submit that we did demonstrate an independently wrongful act, which would satisfy the other two elements for the other two interference claims, the fact that the contractual claim does not require such a showing is acknowledged by the judge, but he dismisses... Excuse me, when you say the contractual claim, you're claiming breach of contract? Well, there's actually two contractual claims. One is an interference with my contractual relationship with my client. And that's a tort claim. So what's the contract claim? The contract claim is a claim against the defendants themselves for breaching their contract with me to assist me rather than to betray me in representing this client. And so I believe that the acts of betrayal in taking her to another attorney and recommending that she have another attorney were acts that were breaching the contract I had with them. So there are two different issues related to contracts. Can I come back to a choice of law question? You say that Michigan law is different from California law in the material respect you just outlined. But what about Michigan's choice of law? It strikes me that the Michigan choice of law rule is basically a Brainerd Curry interest analysis. And that as I look at Michigan choice of law, if this case were being tried in Michigan, Michigan would look to California substantive law. How do you respond to that? Well, I think first of all, with respect to the choice of law issue, that the controlling authority is Nelson versus International Paint Company, which is a decision of this court, 716, second, 640 at page 643, Ninth Circuit opinion, 1983. And in that decision, this court said that the law of the transferor court must be applied. That's the substitute. Of course, that's right. The law of the transferor court must be applied. And if, let me say it this way, if we must apply Michigan law because this was a transfer that requires it, and that depends on whether it's a 1406 transfer or a 1404 transfer, but let's assume we have to apply Michigan law. I'll grant you that for purposes of my question. But as I read choice of law, I'm sorry. Yeah, I'm sorry. Oh, yeah. You disagree because the Michigan choice of law rules were for two reasons. The Michigan choice of law rules relate to a question when the issue of the choice of laws presented for trial in the Michigan State Court. And there are no circumstances which would require that to be done under the Michigan choice of law rules. That is interposing an extra step beyond Nelson in determining what choice. I think you're misreading Nelson. Nelson doesn't say that you apply the forum sub the originating court law across the board for all purposes. It just says that after the court, the case is sent to the second court, you act as if for, you know, what law to apply purposes as if it's still in the first court. And that means you still apply normal substantive rules, including choice of law rules. You don't suddenly because you transfer get fixed with Michigan law. And so the question is, which law would apply under Michigan choice of law rules? That's what I see Nelson is saying. Well, judge, even if you assume even if your interpretation is correct, I believe that in Michigan, the choice of law would still be Michigan law. There's nothing in this particular case that would require application of California law. The judge in the district court made certain assumptions about... Other than that, all the behavior occurred in California and the lawsuit that was the focus of the contract was in California. Other than that, it has nothing to do with California. Well, but the contract that exists between my client and I is a Michigan contract. She was a Florida resident. I'm a both of them. It was not formed in California. But to the extent that we have a tort claim, ordinarily, the tort claim is tried according to the law where the tort is committed. And the tort was committed if there was one in California. That's that's the loci rule. The tort was committed in both Michigan and California. In fact, it could not... In what degree was the tort, if it was a tort, performed in Michigan? I think your allegation is that we had these California lawyers that persuaded the client to move over to Mr. Glippo. And all of this took place in California. But it took place in California because it was because they were able to take advantage of my inability to be present in California when they should have been responding to my request to represent me in my stead while I was recuperating from back surgery. So being in Michigan was part of their instrumentality in being able to pull off this tort. And where was your client during this period when the tort was being committed? Well, she lived in Florida. She'd go back and forth to California from time to time. Was she ever during this relevant period in Michigan? No, she did not visit me in Michigan, but she contacted me in Michigan. We had several communications between us, between Michigan and wherever she was, Florida mostly. So no, she was never in Michigan. Mr. Chabal, if I could interject a question that's of interest to me. In your brief, you state that Terrell and Brunner suggested and encouraged our Chabal to replace you with another attorney to serve as the lead attorney. So Mike, I have two questions about that. One is, what's the evidence of that? Is the evidence that Terrell and Brunner did that? And second, how was that pleaded in your complaint? And tell me what paragraphs of the complaint you're relying on. Well, Terrell and Brunner had to have communicated with my client in some manner. We haven't had any discovery, so I can't tell you specifically what was said. But they had to have communicated in some manner with my client in order to persuade her to even consider an attorney with whom they A, had prior business relationships with, had shared attorney's fees with, had also worked with as co-counsel on other cases. She didn't just walk into Mr. Galipo's office. She was led there, and she had to have been led there by Terrell and Brunner, who had all these prior contacts with Mr. Galipo. But Mr. Jarrett, how do you know that, for example, she didn't just decide to terminate her relationship with you as her lead counsel, and then call these lawyers and ask them who would they recommend to be in the lead in California? Well, I think that, first of all... Because if that hypothetical occurred, that would not be tortious interference by those lawyers. Factually, that would be a more difficult case for me to make, but I haven't had the opportunity to conduct any discovery, so I don't know exactly what was said and how it was said. This motion preceded... I made several attempts to take the defendant's depositions, and I've had no opportunity to conduct any discovery, so I can't answer exactly what was said and who said it and how it was said. I think I should be given that opportunity. Okay, thank you. On the transfer issue, did you present any new evidence on that subject that you had not presented to the District Court in Michigan? I'm sorry, when would I have done that, Judge? On the issue, when you presented the issue of transfer to Judge Fitzgerald, did you present any evidence on that subject that you had not presented to the Michigan Court? Well, I certainly presented to Judge Fitzgerald that there had not been any type of application of the Supreme Court authority that says that the choice of forum belongs to the plaintiff and it should not be disturbed. That's saying you made... That's going to what arguments you made. The question I had is whether or not you presented any different facts to Judge Fitzgerald. What I was about to say is that the record of the hearing in Michigan reflects that the judge in Michigan did not take into consideration any of those issues. You're asking us, you asked Judge Fitzgerald, and now you're asking us through Judge Fitzgerald to review the District Court's decision in Michigan, which our precedent says can only be reviewed by the Sixth Circuit. We can't review his decision. No, I'm not asking you, nor did I ask Judge Fitzgerald to review it. I asked the judge to take into account because if there is a palpable error committed by the transferor court, that is something for the transferee court to take into consideration. Not to reverse it, but he could have then granted my request for remand so that I could then have the Eastern District Judge reconsider his ruling through a motion that I couldn't file simply because the order was entered 12 hours later after the hearing. Or with respect to my motion... You could have filed an appeal in the Sixth Circuit, couldn't you? I could not have, no sir. No, am I wrong? Didn't you file a mandamus and you lost it? I did file a petition for rid of mandamus, but I could not file an appeal. I had no right of appeal from the Eastern District's ruling. And with respect to my motion before Judge Fitzgerald for change of venue, which is not a request to remand the case to Eastern District for that court to reconsider, there's no authority that says that once the decision is made in Eastern District that I'm precluded from filing my own motion for change of venue. And if I'm permitted to file a motion for change of venue, I should not have a mere deferential discussion from the transferee court about the transferor court. I'm entitled to an independent decision from the transferee court on my motion that I'm permitted to file. Otherwise, why permit me to file a motion if the only thing that I get back is, well, we're not going to have this ping-ponging back and forth. I wasn't trying to have it ping-pong back and forth. I wanted the District Court in California to consider those things that are required by the Supreme Court, which the Eastern District judge did not consider at all. So I'm not trying to... Mr. Jarrett, if I could interject. You're almost six minutes over your full 10 minutes. And I do want to hear some rebuttal, let you have some rebuttal time. So even though you're well over your time, my questions, Judge Fletcher's questions, and Judge Collins' questions took you over time. So don't worry about that. But I think we have to hear from Mr. Frank, and I'll give you another two minutes to make rebuttal argument. Thank you. Mr. Frank, please proceed. And if you want more than 10 minutes, because we've out of time for Mr. Jarrett, just tell me, we'll adjust the clock. Thank you very much for the accommodation, Your Honor. May it please the Court. The issues that I'd like to talk about flow from the questions that you asked, Mr. Jarrett. If you have additional questions that didn't come up, I'm sure you'll track me down and ask those. But for the time being, let me just focus on the questions that have already been discussed. And I'll discuss them, if you don't mind, in reverse order. The first question about Judge Collins, you asked about the new facts. You know, based on the legal principles of retransfer, you can imagine a situation where something might have come up in between the transfer. Basically, as the case file was moved from one court to another, something might have changed so that when the receiving court gets the the court that receives the case to look at the question again and think, well, I got to send this one back. That's something that changed in the meantime. Nothing changed in the meantime. In this case, the file got shipped from the Eastern District of Michigan to the Central District of California. There was no difference. Mr. Jarrett would have liked a different result, and I appreciate that. But that's not a change in circumstance. Was the Sixth Circuit ruling on the mandamus petition on the merits? Did it address the failure to apply correct legal standards, do you recall? The Sixth Circuit said that Mr. Jarrett had not shown a clear abuse of discretion that is required for mandamus, and then went through the section 14.4a factors and decided that Judge Tarnow had not abused his discretion. But the court agreed that appeal was not available under the circumstances, and that therefore mandamus was the only form of relief. Well, that's an interesting question, Your Honor. I don't know that they passed on that specifically as much as called the pitch that was thrown at the time it was thrown, which was a petition for writ of mandamus. I don't have the whole opinion in front of me, just the portion of it. So I don't know if improper and appeal had been available. Correct. Correct. And generally, because it's an interlocutory change of venue decision, you're at a point where your option is to go along with it or raise your hand and go to the Court of Appeals where you are at the time, but you have to go through a petition for writ of mandamus. And now nobody, I don't think, argues that the procedure was improper, but that is the procedure. Mr. Jarrett used the procedure and the circuit said no, we're going to let Judge Tarnow's decision stand. Do you agree there's a difference between Michigan and California law on the interference claim in the way that he has contended? There is. There is a difference. And let me highlight, though, the choice of law, because I think it sounds a lot like, you know, the first week of law school on this question, but I think it's relevant because you have a. I used to teach conflicts. We don't teach conflicts on the first week, maybe of the second year. So. So you have a series of steps, obviously. And the step first, when the court, even if it's the transferor court, has to take a look is to look at that state's choice of law principles. And if those principles require the transferor court to then adopt a different state's law, that's entirely appropriate. And that's exactly what happened. Judge Fitzgerald went through the analysis in his first decision on the motion, the 12B6 motion, the choice of law principles. He went through the idea that under Sixth Circuit law and Michigan law, the first thing a Michigan court would do is determine interest and balance the interest. And it was clear from what Judge Fitzgerald found that California had a predominant interest and there was nothing wrong with applying California law because that's what the choice of law principles applied. Notably, Mr. Jarrett didn't brief that before Judge Fitzgerald, and he really didn't brief it in your court. He's relied on a different argument, which is this argument preceding it, which is we go to Michigan, we should be in a Michigan court and have a Michigan court determine it. But that doesn't answer the second question, which is under choice of law principles, what does that court look at? And the balance, I think, Judge Collins, you pointed out, there's nothing to offer a counterweight to California. Everything here happened in California. In fact, the case is pending, was pending in California. It's hard to say that Michigan as a state would have any interest in determining and imposing its law on all this activity between lawyers and ethics and obligations and a courtroom and a trial in all of which happened in California. So, yeah, go ahead, Judge Collins. If we applied California substantive law, and you need independently wrongful conduct, as I read Judge Fitzgerald's order, the sole ground on which that element was found not to be satisfied here for 12b6 purposes was evolved wrongly. Am I reading that correct, that he just didn't plead enough facts about the badmouthing that took place? Well, I think it's a little more than that, because in the second decision, the January 13th decision, Judge Fitzgerald did go through the allegations about California rules of professional conduct, and looked at the allegations and suggested that there was a lack of specificity to the allegation in the first place, not just a complaint paragraph 44, and whether that statement is a sufficiently factual statement that there was a violation of anything in the California rules of ethics. So I think if it was flawed, even with the acknowledgement that the fact in First Amendment complaint paragraph 44 might be true. But I'm looking at like page eight of his ruling and page 10 in the ER, it says, to the extent that plaintiffs are arguing that defendants must have disparaged plaintiffs, because Jarrett was replaced as lead attorney, this argument is not persuasive. And then says that it's the allegation that the defendants violated the rules of conduct is conclusory and therefore not entitled. So it's not enough to say that they wanted me out because they wanted more money. And behind my back, they bad mouth me to the client and got me ousted so that they could bring in their friend who gave them more money that that's not a plausible inference for all purposes. The inference let's let's talk about what the complaint actually ledges. Let's kind of rewind to what might have really happened in the world, according to the way the complaint is set out, which is that some at some point in time, Ms. Brunner, Mr. Terrell, have a conversation with Ms. Archibald. And they say, let's just say, we're not happy. You know, we just think that guy's not doing a very good job for you. And you should find someone else to replace it. That's actually ethically appropriate, not just appropriate, it's probably required of them as lawyers to suggest that their client should be better off would be better off with a different co-counsel. So first of all, we don't know that they did anything improper at all. And the complaint doesn't say that they did anything, even if they disparaged him. But the complaint says that he turned down their request to hike their share. And that right after that, he bet he claims now he admits it's not information, but he doesn't know the exact conversation. But right after that, they had a he was ousted, and they cut the deal exactly the deal they wanted with their friend they brought in whom she didn't know from Adam. That's not a plausible inference that very bad things were said about him. Why do we need a transcript? Well, it is an inference that they said something about him, you might call it bad. It's hard to say because it's not in the transcript. It's not in the complaint what he said he said something. And the complaint says it's disparaging really, this isn't 9b. And then this is rule eight. Does it really say we need the words? If it were 9b, we'd need the words. But it's not 9b. And it's enough to say they bad mouth me to get more money and said terrible things about me. I don't know exactly what they said, but I'll find it out. But why isn't that enough to unlock the door to discovery? Well, I'll save the argument about the with the interference claim. But on the question that you've asked, the issue is, is this complaint that says on information and belief, there was a disparaging comment, a disparaging comment, undefined. First of all, it's not defamatory. We know that there's not a claim for defamation. It's something less than that disparaging could have been. And it's consistent with the complaint. Mr. Jared is not a good enough lawyer to take you through trial. Let's say they said that. And let's say Ms. Archibald said, okay, find me someone else. And they said, okay, we'll find you Del Galipo. And they found Del Galipo. Mr. Jared to his in his complaint doesn't allege that he was terminated. He alleges that he lost his status as lead counsel. That's important because Judge Fitzgerald asked him about that. And Mr. Jared didn't change it. He lost his status as lead counsel. So apparently at the time of the payoff, there's Mr. Jared, there's Mr. Galipo, there's Ms. Bruner, there's Mr. Terrell, all of them. And they're supposed to figure out how to split the balance of the attorney fee. Mr. Jared doesn't do the thing a fired or reduced level contingency lawyer should do. He doesn't promote his lien at the moment of the settlement to say to the county, I'm here when you're cutting checks for attorney's fees, I should be in. He doesn't sue Ms. Archibald to say you're my client and you didn't pay me for my services. So he doesn't have the underlying claim and he doesn't allege that the underlying claim even existed against those people. And Judge Fitzgerald was very clear with Mr. Jared to say, I'm not tracking your damage claim. Your damage claim is a quantum merit claim as an attorney on a lien, but you didn't file that against the right people. Well, we just have an unjust enrichment claim. So wouldn't that cover and embrace quantum merit? That's an interesting question, Your Honor, because the quantum merit claim has to be brought against the client at the time. Plus the attorney lien under Michigan or California law is imposed so that the payor has some knowledge. Like I am about to pay a settlement. Oh, that attorney just notified me of a lien. I better include him in the payoff of the settlement. If payor overrides that, there's a claim against the payor. You overrode my attorney lien or a claim against the client that says you fired me and I'm entitled to quantum merit from you, the client. There's not a claim anywhere that I've ever found where one lawyer versus another lawyer who are both contingency lawyers in the same case have a fight where quantum merit is the argument because the retention of the benefit was to the client. The client got the benefit, if any, from Mr. Jarrett's services. That's quantum merit. He goes to his client and says, I painted your house and you didn't pay me for painting my house. That's basic quantum merit. And we don't know why he didn't file that. Honestly, we don't know why he didn't file that claim. I just want to highlight if I could, and then I'll be, I'm over time, but I'll ask, I'll just want to highlight something because I think I didn't realize it. Mr. Jarrett has sued and lost against the county and Mr. Gallipo. As far as I know, there was a case pending just got resolved in Los Angeles County Superior Court. And I've raised that to your attention so that you can take judicial notice of the lawsuit, which I'm sorry, I didn't know about earlier. And I'll give you the case number. It's case number 20, P like Paul, S like Sam, C like Charlie, V like Victor, 00030. And it was just resolved on a demur, unless I've got the procedure wrong. And so there was a lawsuit against Mr. Gallipo for a share of the fee, which maybe would have been the right argument to make. I don't know why it was unsuccessful, but there's never been a case against Ms. Archibald. If I could take one more minute to just answer a couple more of the questions that came up, or I don't know how you want to handle it. We're giving Mr. Jarrett extra time, but he was already five over. So we'll have seven over. You can have another, take another three minutes. Okay. Thank you. I appreciate that. I just wanted to highlight the argument about the process and the claim for a change of venue and the re-transfer. Because at the bottom of it, I think what Mr. Jarrett is asking for is a chance to have Judge Tarnow passed away. So it's not Judge Tarnow, but some judge in Judge Tarnow's place reconsider. But the missing element would be that there would be any different result from a motion to reconsider in the first place that would have gotten Mr. Jarrett to a different point. He's got federal judges in different places, but they're all applying the same law under the choice of law principles. And whether they're sitting in Detroit or in Los Angeles, it really shouldn't matter. And with that, I'll wrap up. I think I covered everything else that I wanted to cover, unless there's other issues that are remaining open. May I reply? Yes. Okay. First of all, with respect to the last thing that Mr. Frank just said, the issue of the choice of the issue of the remand of the case, so that the district court judge in has to do with the application of Supreme Court authority that says plaintiff's choice of form is paramount. And that the defendants have an exceptional burden to establish a basis for changing the venue. And neither of those things occurred. Now, so I can tell you that if the judge took into account the Supreme Court authority, that I think that there would be different result if the matter was remanded. I also believe that because I'm entitled to bring an independent motion before the transferee court, that I'm entitled to an independent decision applying the law that the Supreme Court has handed down, which was not applied before. So it's not like I'm asking the transferee court to reach a different result, considering the same factors. I'm asking the transferee court to reach a different result, considering factors that have never been decided before in the Eastern District. You know, if I can interrupt for just a minute, if I were a district judge looking at this as a 1404 motion sitting in Michigan, and the argument was this case really ought to be tried in California because the relevant events took place in California, which they did. This is a really easy 1404 transfer. I would have been astounded if a federal judge would not grant the 1404 transfer. Well, but you see, Judge, the fact of the matter is the Supreme Court says you have to consider other factors, which the district court in Michigan did. You don't take my point. Treating a 1404 motion the way a district judge is required to treat a 1404 motion. This is a really easy motion. 100 out of 100 district courts would have granted the motion to transfer to California. 1404 is merely a codification of the doctrine of form non-convenience. Yes, I know that. And so as such, all of the authority that the plaintiff's choice of form being paramount. There's nothing that supersedes that. But I would also say that I disagree with Mr. Frank. The denial of the petition for mandamus was not a decision on the merits. It was merely a decision that for mandamus purposes, the court was not persuaded that the writ should be issued. That's not a decision on the merits. And I would also indicate to the court that one of the with respect to the choice of law issue, one of the problems that I have with Judge Fitzgerald's analysis is that he made certain presumptions that were simply factually untrue. And there was nothing in the record upon which for him to base those assumptions. I don't want to I hesitate to interrupt, but you're more than a minute over your extended two minutes. Give us your closing sentence so we can submit the case, please. The fact of the matter is that the Judge Fitzgerald assumed that the only contact with Michigan was the fact that I live here. And the fact of the matter is there were many contacts with Michigan between the defendants and myself, between the client and myself, where the contract was formed, the work that they were supposed to do. In fact, the only thing that really happened in California that without any Michigan ties at all was the fact that they took my client to another attorney when I wouldn't accede to their demands for more money. And then they hid the settlement from me. I didn't even know it was settled when it was settled. I had to find that separately. Okay, Mr. Jarrett, you're well over your time. I think we have the argument in hand. The case of Jarrett Fitzgerald shall now be submitted. And Mr. Jarrett, Mr. Frank, you'll hear from us in due course. And we will submit the case and the court is adjourned for the day. Thank you. Be well, your honors. Thank you, Judd. Thank you both.
judges: FLETCHER, GOULD, COLLINS